The relief described hereinbelow is SO ORDERED.

Signed August 05, 2005.

_____
Ronald B. King
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THOMAS S. GUNVILLE AND | § | CASE NO. 04-70080-RBK |
| TANA E. GUNVILLE, | § | |
| | § | |
| DEBTORS | § | CHAPTER 7 |
| _____ | § | |
| | § | |
| JANET S. CASCIATO-NORTHRUP, | § | |
| TRUSTEE | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-7013-RBK |
| | § | |
| THOMAS S. GUNVILLE AND | § | |
| TANA E. GUNVILLE | § | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

In connection with the Judgment rendered in this adversary proceeding, the Court makes the following Findings of Fact and Conclusions of Law pursuant to FED. R. BANKR. P. 7052.

# FINDINGS OF FACT

1. On June 14, 2001, Thomas S. Gunville and Tana E. Gunville ("Debtors") sold real property in Otero County, New Mexico to a group called B-Jolin Ltd. Company ("B-Jolin") for $150,000. B-Jolin paid $50,000 in cash and executed a $100,000 promissory note ("the B-Jolin Note") for the balance, payable to the Gunvilles. The B-Jolin Note called for annual interest payments on June 14, 2002 and June 14, 2003, with all principal and unpaid interest due and payable on June 14, 2004. The B-Jolin Note also gave the buyer the option to obtain partial releases of subdivided lots for a payment of $7,500 per acre.

2. On March 13, 2002, the Debtors bought real property in Brewster County, Texas from Reverend Elaine Ponton ("Ponton") for $200,000. The Debtors paid $100,000 in cash, and executed a promissory note in the principal amount of $100,000 for the balance of the purchase price ("the Ponton Note"). The Ponton Note called for 35 monthly payments of interest only. After 35 months, all principal and unpaid interest was due and payable. Ponton received a deed of trust to secure payment of the Ponton Note. Ponton testified by deposition that no additional consideration was contemplated in the agreement between the Debtors and her.

3. In June 2003, the Debtors received a principal payment of $15,000 and an interest payment of $8,000 on the B-Jolin Note. The Debtors kept and used the payments.

4. On October 29, 2003, the Debtors prepared a transfer document purporting to have transferred the B-Jolin Note to Ponton on March 13, 2002. The document was recorded in Otero County on October 30, 2003. The Debtors claimed that they had transferred the B-Jolin Note to Ponton on March 13, 2002, as part of the sale transaction. Ponton's deposition testimony stated that she was not aware of the purported transfer until around April 30, 2003. Ponton did not receive the original B-Jolin Note or the related mortgage until after the bankruptcy was filed.

5. The Debtors filed a voluntary Chapter 7 case on February 10, 2004. The Debtors listed the B-Jolin Note as exempt property on their schedules. The Court denied this exemption on July 27, 2004. The Trustee brought this adversary proceeding on May 7, 2004, to deny the Debtors' discharge pursuant to 11 U.S.C. 727(a)(2)(A). Ponton transferred the B-Jolin Note to the Chapter 7 Trustee on or about June 21, 2004.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction and venue of this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the Standing Orders of Reference of the District Court. This matter is a core proceeding. 28 U.S.C. § 157(b)(2)(J).

2. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3. The transfer of the B-Jolin Note from the Debtors to Ponton was a transfer of the Debtors' property.

4. The earliest the transfer could have occurred is in October 2003. The Debtors received the benefits of ownership of the B-Jolin Note in June 2003, and Ponton did not receive the original B-Jolin Note or its accompanying mortgage prior to the recordation of the transfer in October 2003. Therefore, the transfer occurred within the year prior to the filing of the bankruptcy petition.

5. Intent to hinder, delay or defraud may be inferred from the Debtors' conduct. ***Robertson v. Dennis*** (***In re Dennis***), 330 F.3d 696, 701-02 (5th Cir 2003). Several factors, also known as "badges of fraud," may be used to determine the intent of a debtor, including

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by

3

> creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.* at 702. Based on the Debtors' conduct, intent to hinder, delay or defraud their creditors may be inferred.

6. The Debtors transferred the B-Jolin Note to Ponton for no consideration in a bizarre attempt to secrete the B-Jolin Note. The contract price with Reverend Ponton was $200,000: the Debtors paid $100,000 in cash, and the Debtors gave a note and deed of trust to Ponton for the balance of the purchase price. The value of the B-Jolin Note at the time of transfer was $85,000. Therefore, the Debtors transferred consideration, directly or as security, of $285,000 on a $200,000 purchase price.

7. The Debtors retained possession of the B-Jolin Note until after the bankruptcy was filed, and then claimed it as exempt. In addition, the Debtors retained the benefits of the B-Jolin Note at all times until bankruptcy.

8. The Debtors were having trouble paying their debts as they were becoming due during the year before the bankruptcy petition was filed.

9. The Debtors were facing two lawsuits at the end of the summer in 2003. These lawsuits were exacerbating the Debtors' financial difficulty.

10. The Debtors purported to transfer the note to Ponton on March 13, 2002. The Debtors did not give possession of the original B-Jolin Note to Ponton, however, until after the bankruptcy was filed. The Debtors also listed the B-Jolin Note on their schedules as exempt property. Further, the Debtors sent Ponton a letter after the bankruptcy was filed instructing her to avoid giving the note to any other party for fear that the Trustee would put it into the estate.

11. Tana Gunville acted with the intent to hinder, delay, or defraud her creditors. Thomas Gunville did not orchestrate the transaction, but he signed the necessary documents to effectuate the transfers, thereby participating in the fraudulent transfer scheme.

12. Therefore, Thomas and Tana Gunville are denied a discharge of their debts pursuant to 11 U.S.C. § 727(a)(2)(A).

13. Any Finding of Fact which should more appropriately be charactered as a Conclusion of Law shall be considered a Conclusion of Law herein. Similarly, any Conclusion of Law which should more appropriately be characterized as a Finding of Fact shall be considered a Finding of Fact herein. An order will be entered contemporaneously herewith.

# # #